McFADDEN, Judge,
concurring fully and specially.
I join fully in the majority opinion and write separately to explain that our exercise of jurisdiction over the merits is mandated by Lassiter v. Dept. of Social Svcs. of Durham County, 452 U. S. 18 (101 SCt 2153, 68 LE2d 640) (1981).
The Supreme Court of the United States has repeatedly drawn boundaries beyond which state termination-of-parental-rights proceedings may not trespass. It has held that parental rights may not *67 be terminated upon less than clear and convincing evidence, Santosky v. Kramer, 455 U. S. 745, 769-770 (IV) (102 SCt 1388, 71 LE2d 599) (1982), and it has held that a state may not condition appeals from terminations of parental rights on the ability to pay record preparation fees. M. L. B. v. S. L. J., 519 U. S. 102, 119-124 (V) (117 SCt 555, 136 LE2d 473) (1996) (reaffirming that courts must resist the “feeble enticement of the civil label-of-convenience”) (citation and punctuation omitted).
And, contrary to the dissent, the Supreme Court of the United States recognized a due process right to counsel in termination cases in Lassiter, 452 U. S. 18. It is true that Lassiter does not recognize an unqualified right to counsel. Indeed, it recognizes a “presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.” Id. at 26-27 (II) (A). But the holding of Lassiter is that this presumption can be overcome: “It is against this presumption that all other elements in the due process decision must be measured.” Id. at 27 (II) (A).
As to the performance of this measurement, Lassiter identifies
three elements to be evaluated in deciding what due process requires, viz., the private interests at stake, the government’s interest, and the risk that the procedures used will lead to erroneous decisions. We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom.
452 U. S. at 27 (II) (B) (citation omitted).
The Lassiter court first analyzed those factors as to termination cases generally. It summarized that analysis as follows.
[T]he parent’s interest is an extremely important one (and may be supplemented by the dangers of criminal liability inherent in some termination proceedings); the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent’s rights insupportably high.
452 U. S. at 31 (II) (C).
*68 Having determined that appointed counsel could be, but would not always be required by due process, 452 U. S. at 31 (II) (C), the Lassiter court turned to the facts of individual cases, particularly the risk of an erroneous termination, and held that the risk of error is to be evaluated on a case-by-case basis. “[T]he decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings [is] to be answered in the first instance by the trial court, subject, of course, to appellate review.” Id. at 32 (II) (C) (citation omitted).
“Nevertheless, because child-custody litigation must be concluded as rapidly as is consistent with fairness,” the Supreme Court went on to decide “whether the trial judge denied Ms. Lassiter due process of law when he did not appoint counsel for her.” 452 U. S. at 32 (III). The Court noted at the outset of its opinion that a year after her child was taken, “Ms. Lassiter was charged with first-degree murder, was convicted of second-degree murder, and began a sentence of 25 to 40 years of imprisonment.” Id. at 20 (I) (footnote omitted). It set out an analysis of the evidence presented at the termination hearing, which is quoted below,[62] and found that evi *69 dence substantial enough that the absence of counsel did not render the proceedings fundamentally unfair. Id. at 32-33 (III).
In order to apply Lassiter to Georgia terminations of parental rights generally, we must address two ways in which current Georgia law differs from the North Carolina law analyzed in Lassiter. First, as the majority acknowledges, Georgia has established a statutory right to appointed counsel in termination cases, former OCGA § 15-11-98, current OCGA § 15-11-262, and that statutory right has beenauthoritatively construed to include appellate counsel. Nix v. Dept. of Human Resources, 236 Ga. 794, 795-796 (225 SE2d 306) (1976). The denial of appellate counsel in this case was in violation of former OCGA § 15-11-98. So that statute and its successor extinguish any pecuniary interest or interest in informal procedures that the state might otherwise have been entitled to assert. Per force the state can have no due process interest in an unlawful denial of a statutory right.
Second, terminations of parental rights are now subject to our discretionary appeal procedure. OCGA § 5-6-35 (a) (12). By subjecting termination of parental rights to that procedure, Georgia has greatly increased “the complexity of the proceeding.” Lassiter, 452 U. S. at 31 (II) (C).
Those features of Georgia law constitute a strong argument for the proposition that, under Lassiter, due process categorically mandates appointment of counsel for all appeals from terminations of parental rights in this state. But we need not decide that issue today. Although ultimately we are not persuaded by the arguments presented by the mother’s appellate counsel that the termination before us was error, nevertheless those arguments were substantial. Consequently, this is a case in which — applying settled law handed down by the Supreme Court of the United States — we must find a due process violation concerning this appeal and in which we therefore have both the authority and the duty to “excuse compliance with [the] statutory requirement for [discretionary] appeal[s].” Gable v. State, 290 Ga. 81, 85 (2) (b) (720 SE2d 170) (2011).

 The Supreme Court analyzed the evidence in Lassiter as follows:
The respondent represents that the petition to terminate Ms. Lassiter’s parental rights contained no allegations of neglect or abuse upon which criminal charges could he based, and hence Ms. Lassiter could not well have argued that she required counsel for that reason. The Department of Social Services was represented at the hearing by counsel, but no expert witnesses testified, and the case presented no specially troublesome points of law, either procedural or substantive.
While hearsay evidence was no doubt admitted, and while Ms. Lassiter no doubt left incomplete her defense that the Department had not adequately assisted her in rekindling her interest in her son, the weight of the evidence that she had few sparks of such an interest was sufficiently great that the presence of counsel for Ms. Lassiter could not have made a determinative difference. True, a lawyer might have done more with the argument that William should live with Ms. Lassiter’s mother — but that argument was quite explicitly made by both Lassiters, and the evidence that the elder Ms. Lassiter had said she could not handle another child, that the social worker’s investigation had led to a similar conclusion, and that the grandmother had displayed scant interest in the child once he had been removed from her daughter’s custody was, though controverted, sufficiently substantial that the absence of counsel’s guidance on this point did not render the proceedings fundamentally unfair. Finally, a court deciding whether due process requires the appointment of counsel need not ignore a parent’s plain demonstration that she is not interested in attending a hearing. Here, the trial court had previously found that Ms. Lassiter had expressly declined to appear at the 1975 child custody hearing, Ms. Lassiter had not even bothered to speak to her retained lawyer after being notified of the termination hearing, and the court specifically found that Ms. Lassiter’s failure to make an effort to contest the termination proceeding was without cause. In view of all these circumstances, we hold that the trial court did not err in failing to appoint counsel for Ms. Lassiter.
452 U. S. at 32-33 (III) (footnote omitted). The Court added in a footnote, “Ms. Lassiter’s argument here that her mother should have been given custody of William is hardly consistent *69 with her argument in the collateral attack on her murder conviction that she was innocent because her mother was guilty.” Id. at 33 (III), n. 8 (citation omitted).